

FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

2026 JUN 25 PM 2:29

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

RECEIVED
JUN 26 2026
PRO SE OFFICE

---

AKANIYENE WILLIAM ETUK,

Plaintiff,

-against-

NEW YORK CITY POLICE DEPARTMENT; CITY OF NEW YORK; BROOKDALE UNIVERSITY HOSPITAL; COREY COPELAND; and JOHN DOE OFFICERS 1-20,

Defendants.

---

Case No.: 24-CV-5180 (EK)(SDE)

**CONSOLIDATED AMENDED COMPLAINT**
(Pursuant to Court Order, Dkt. 12, dated June 15, 2026)

*BENCH* ~~JURY~~ **TRIAL DEMANDED**

## I. INTRODUCTION

This is a civil rights action brought by Plaintiff Akaniyene William Etuk against the City of New York, the New York City Police Department, John Doe Officers 1-20 ("the Officers"), Brookdale University Hospital ("Brookdale"), and Corey Copeland ("Copeland") for violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, enforceable through 42 U.S.C. § 1983, and for related state-law claims.

On September 17, 2022, NYPD officers, without a warrant, without lawful authority, and in violation of Plaintiff's clearly established constitutional rights, forcibly entered Plaintiff's residence, placed him in handcuffs causing physical injury, and transported him to Brookdale University Hospital, where he was forcibly injected with medication without his consent while still in police custody. This action was set in motion by Copeland, who conspired with the Officers to remove Plaintiff from a residence for which Plaintiff had paid rent and established legal residency, as evidenced by payment records that were presented to the Officers on both visits to the property.

REC'D IN PRO SE OFFICE
JUN 26 '26 AM 9:55

ETUK - 1

The City of New York's failure to train and supervise NYPD officers in the legal boundaries between civil landlord-tenant disputes and criminal matters, and the NYPD's practice of effectuating illegal evictions at the behest of landlords, directly caused Plaintiff's injuries. Brookdale Hospital, acting jointly with state actors, participated in the deprivation of Plaintiff's constitutional rights by administering involuntary medication while Plaintiff remained in police custody.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction). The claims arise under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy.

Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred in Kings County, New York, within this district.

## III. PARTIES

### A. Plaintiff

Plaintiff Akaniyene William Etuk is a natural person and a resident of the State of New York. At all times relevant to this action, Plaintiff resided at 2858 Linden Boulevard, Apt. #3C, Brooklyn, New York 11208, pursuant to a sublease agreement with Defendant Corey Copeland. Plaintiff's current mailing address is 217 Hamilton Avenue, Apt. #1-I, Staten Island, New York 10301.

### B. Defendants

Defendant City of New York ("the City") is a municipal corporation organized and existing under the laws of the State of New York. The City operates and controls the New York City Police Department ("NYPD") and is responsible for the policies, practices, customs, and training of

ETUK - 2

NYPD officers. The City's principal office is located at New York City Law Department, 100 Church Street, New York, NY 10007.

Defendants John Doe Officers 1-10 ("Group 1 Officers") are NYPD officers whose identities are presently unknown to Plaintiff. Group 1 Officers responded to 2858 Linden Boulevard, Apt. #3C, Brooklyn, New York 11208, at approximately 9:00 AM on September 17, 2022, for the purpose of questioning Plaintiff's right to reside at the premises. These officers are employed at the NYPD precinct located at 560 Sutter Avenue, Brooklyn, New York 11207. Pursuant to this Court's Order dated June 15, 2026 (Dkt. 12), Corporation Counsel is directed to identify these officers within forty-five (45) days.

Defendants John Doe Officers 11-20 ("Group 2 Officers") are NYPD officers whose identities are presently unknown to Plaintiff. Group 2 Officers returned to 2858 Linden Boulevard, Apt. #3C, Brooklyn, New York 11208, at approximately 8:30 PM on September 17, 2022, with additional personnel, and forcibly removed Plaintiff from his residence. These officers transported Plaintiff, in handcuffs, to Brookdale University Hospital. These officers are also employed at the NYPD precinct located at 560 Sutter Avenue, Brooklyn, New York 11207. Pursuant to this Court's Order dated June 15, 2026 (Dkt. 12), Corporation Counsel is directed to identify these officers within forty-five (45) days.

Defendant Brookdale University Hospital is a hospital located at One Brookdale Plaza, Brooklyn, New York 11212. On September 17, 2022, Brookdale acted jointly with NYPD officers by administering involuntary medication to Plaintiff while he remained in police custody and in handcuffs, thereby acting under color of state law. Dr. Nashua Wisdom, MD, a physician employed by Brookdale, personally participated in the deprivation of Plaintiff's rights as described herein.

Defendant Corey Copeland is an individual who, upon information and belief, resides at 2858 Linden Boulevard #C, Brooklyn, New York 11208. Copeland sublet Apartment #3C at that address to Plaintiff on July 24, 2022. Copeland conspired with NYPD officers to effectuate Plaintiff's unlawful removal from the premises despite knowledge that Plaintiff was a lawful tenant who had paid rent.

## IV. STATEMENT OF FACTS

### A. Plaintiff's Lawful Tenancy

ETUK - 3

On July 24, 2022, Plaintiff entered into a sublease agreement with Defendant Corey Copeland for Apartment #3C located at 2858 Linden Boulevard, Brooklyn, New York 11208. Plaintiff paid the deposit and first month's rent to Copeland on July 24, 2022, the same day the sublease was executed. Payment was made to Copeland's CashApp account, registered under the handle $ChazMoneyMatt. Plaintiff thereafter took possession of the apartment and established legal residency therein, fulfilling all conditions required under state law.

Plaintiff made ongoing rent payments to Copeland, as evidenced by payment history records on Plaintiff's CashApp account. Plaintiff's service animal also resided at the premises. Plaintiff had fully established his tenancy under applicable New York law.

**B. The First NYPD Visit — 9:00 AM, September 17, 2022**

At approximately 9:00 AM on September 17, 2022, John Doe Officers 1-10 (Group 1 Officers) appeared at Plaintiff's residence at 2858 Linden Boulevard, Apt. #3C, Brooklyn, New York 11208, purportedly to question Plaintiff's eligibility to reside at the premises.

Plaintiff responded to the officers' inquiry by presenting proof of his rent payments to Copeland, demonstrating that he had lawfully paid rent and established residency at the apartment. Despite being presented with this evidence, the Group 1 Officers nonetheless engaged in the following misconduct:

- Forced Plaintiff to identify himself without lawful justification, in violation of Plaintiff's right to privacy and the Fourth Amendment;

- Made legal determinations regarding Plaintiff's tenancy rights without legal authority or a license to practice law;

- Failed to display their NYPD identification, thereby failing to verify themselves as registered law enforcement officers.

After reviewing Plaintiff's payment records, the Group 1 Officers departed the premises without taking further action. Plaintiff remained in his apartment.

**C. The Second NYPD Visit - 8:30 PM, September 17, 2022 - Unlawful Entry and Arrest**

At approximately 8:30 PM on the same evening, John Doe Officers 11-20 (Group 2 Officers) returned to Plaintiff's residence, this time with a larger contingent of officers. No warrant

ETUK - 4

had been issued for Plaintiff's arrest. No court order had been obtained authorizing Plaintiff's eviction. No exigent circumstances justified entry without a warrant.

The Group 2 Officers did not knock and announce themselves in any lawful manner. Upon making contact with Plaintiff, they approached him with firearms drawn. Under threat, duress, and coercion, and with guns pointed at him, Plaintiff was ordered to leave his own residence.

Plaintiff attempted to seek assistance by calling 911 while the officers were present, reporting individuals in police uniforms standing at his door. Despite this, the officers refused to leave and continued their unlawful course of conduct.

The Group 2 Officers physically placed Plaintiff in handcuffs with no slack, causing immediate pain and injury to Plaintiff's wrists. Plaintiff pleaded with the officers that the handcuffs were too tight and were causing him physical injury, but the officers ignored his pleas. Medical records subsequently confirmed soft tissue swelling around the handcuff region (Exhibit C — CityMD records).

The Group 2 Officers also seized Plaintiff's service animal and transported both Plaintiff and his service animal to a different location without Plaintiff's consent. Plaintiff had not committed any crime. No probable cause existed for his arrest or detention.

## D. Forcible Medication at Brookdale University Hospital

The Group 2 Officers transported Plaintiff, while still in handcuffs, to Brookdale University Hospital, located at One Brookdale Plaza, Brooklyn, New York 11212. Plaintiff was not transported voluntarily, he was in police custody throughout.

Upon arrival at Brookdale, Plaintiff remained in handcuffs and continued to suffer pain from the restraints. Plaintiff pleaded with Dr. Nashua Wisdom, MD, the responding physician, that the handcuffs were causing injury to his wrists. Dr. Wisdom ignored Plaintiff's pleas and walked away, leaving Plaintiff in pain and under continued restraint. A document from Brookdale Hospital states that Plaintiff exhibited no signs of aggressive behavior (Exhibit F).

While Plaintiff was in police custody at Brookdale, still restrained and under the authority of the NYPD, hospital staff administered an injection to Plaintiff without his consent and over his explicit objection. Plaintiff had clearly communicated his refusal of any medication. Hospital records confirm the administration of this substance (Exhibit G-document showing Plaintiff was

ETUK - 5

injected without permission). Medical records were subsequently found to contain fabricated entries (Exhibit H).

The NYPD officers were present at Brookdale throughout this process. Brookdale's administration of involuntary medication occurred while Plaintiff was physically restrained by state actors. Brookdale thus acted jointly with the NYPD, rendering its conduct attributable to the state.

## E. Deprivation of Property

Following his release from police custody, Plaintiff contacted Corey Copeland by telephone to request access to his personal property, which remained in the apartment at 2858 Linden Boulevard, Apt. #3C. Copeland refused to return Plaintiff's property and instead referred Plaintiff to the police, the same officers who had arrested and removed him.

Plaintiff went to the NYPD precinct at 560 Sutter Avenue, Brooklyn, New York 11207. Officers at the precinct denied any possession of Plaintiff's property or knowledge of its whereabouts. Plaintiff's property has not been returned to him. The estimated value of the property lost is no less than $10,000.00.

## F. Copeland's Conspiracy with NYPD Officers

The sequence of events described herein demonstrates that Copeland conspired with NYPD officers to effectuate Plaintiff's unlawful removal. Copeland, as Plaintiff's landlord, had no legal mechanism to remove Plaintiff without a court order. Rather than pursuing lawful eviction proceedings, Copeland contacted the NYPD and directed officers to remove Plaintiff.

Critically, the Group 1 Officers were shown proof of Plaintiff's rent payments on their 9:00 AM visit and departed. Their return at 8:30 PM with additional officers, without any new legal authority, is consistent with Copeland's renewed communication with the NYPD and his direction that officers effect Plaintiff's removal. This coordinated action between Copeland and the Officers constitutes a conspiracy under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

## G. City's Failure to Train and Monell Liability

The City of New York, through the NYPD, maintains a policy, custom, and practice of responding to landlord calls and effectuating the removal of tenants from their residences without

warrants, without court orders, and without probable cause for arrest. The NYPD consistently fails to train officers to distinguish between civil landlord-tenant disputes, which must be resolved through the courts, and criminal matters that would justify police intervention.

This failure to train caused the officers in this case to make legal determinations about Plaintiff's tenancy rights, determinations they had no legal authority to make, and to physically remove Plaintiff from his home in the absence of any court order or warrant. The NYPD's ratification of this conduct is further evidenced by the Civilian Complaint Review Board's closure of Plaintiff's complaint without meaningful investigation.

The City's failure to train is a moving force behind the constitutional violations Plaintiff suffered. Had officers been properly trained that they could not remove a tenant without a court order or valid warrant, the events of September 17, 2022 would not have occurred.

## H. Injuries

As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries:

- Physical injury to his wrists from excessively tight handcuffs, confirmed by CityMD (soft tissue swelling) and documented in an orthopedic referral from BronxCare Health System;

- Forcible administration of an unknown substance without consent;

- Unlawful removal from and deprivation of his lawful residence, rendering him homeless;

- Loss of personal property valued at no less than $10,000.00;

- Severe emotional distress, humiliation, and psychological harm;

- Deprivation of liberty and due process rights.

### V. CLAIMS FOR RELIEF

### COUNT I - Violation of the Fourth Amendment (Warrantless Entry into Home)

Against: John Doe Officers 1-20

Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

ETUK - 7

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures and prohibits police officers from entering a person's home without a warrant, consent, or exigent circumstances. Payton v. New York, 445 U.S. 573 (1980).

Defendants John Doe Officers 11-20 entered Plaintiff's residence on the evening of September 17, 2022, without a warrant, without Plaintiff's consent, and without exigent circumstances. Plaintiff's home is accorded the highest level of Fourth Amendment protection. The warrantless entry was per se unreasonable and constitutes a violation of the Fourth Amendment, enforceable pursuant to 42 U.S.C. § 1983.

## COUNT II - Violation of the Fourth Amendment (Excessive Force)

Against: John Doe Officers 1-20

Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

The application of handcuffs so tight as to cause injury, without any lawful basis for arrest, constitutes excessive force in violation of the Fourth Amendment. Plaintiff repeatedly informed officers that the handcuffs were causing physical injury. Officers ignored these complaints. Medical records confirm soft tissue injury to Plaintiff's wrists. This use of force was objectively unreasonable under the circumstances. Graham v. Connor, 490 U.S. 386 (1989).

## COUNT III - Violation of the Fourth Amendment (False Arrest and False Imprisonment)

Against: John Doe Officers 1-20

Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

The Group 2 Officers seized and detained Plaintiff without probable cause, without a warrant, and without any lawful justification. Plaintiff had not committed any crime. Plaintiff had established lawful tenancy, as evidenced by payment records presented to officers. The seizure and transport of Plaintiff to Brookdale University Hospital constitutes false arrest and false imprisonment in violation of the Fourth Amendment, enforceable pursuant to 42 U.S.C. § 1983.

## COUNT IV - Violation of the Fourteenth Amendment (Substantive Due Process — Forced Medication)

ETUK - 8

Against: John Doe Officers 1-20 and Brookdale University Hospital

Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

A person in state custody has a clearly established constitutional right to refuse unwanted medical treatment. Washington v. Harper, 494 U.S. 210 (1990); Cruzan v. Director, Mo. Dep't of Health, 497 U.S. 261 (1990). Plaintiff was in police custody, in handcuffs and under the physical control of NYPD officers, when Brookdale personnel administered an injection over Plaintiff's explicit objection.

Brookdale acted jointly with the NYPD officers who were present and who maintained physical custody of Plaintiff throughout. The forcible administration of medication while Plaintiff was restrained by state actors constitutes state action attributable to both the Officers and Brookdale. This conduct violated Plaintiff's substantive due process rights under the Fourteenth Amendment.

## COUNT V - Municipal Liability Under Monell (42 U.S.C. § 1983)

Against: City of New York

Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

To establish municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978), a plaintiff must demonstrate that a municipal policy or custom was the moving force behind the constitutional violation. Plaintiff alleges the following:

First, the City maintains a de facto policy and custom of deploying NYPD officers to resolve civil landlord-tenant disputes through physical removal of tenants, without warrants or court orders. This practice is not authorized by law and deprives tenants of their constitutional rights.

Second, the City has failed to train NYPD officers to recognize the boundaries between civil landlord-tenant matters (which require court proceedings) and criminal matters (which may justify police intervention). This failure to train amounts to deliberate indifference to the constitutional rights of tenants who are subject to unlawful police removal.

ETUK - 9

Third, the City ratified the unconstitutional conduct of the officers through the CCRB's closure of Plaintiff's complaint without meaningful investigation, thereby sanctioning the officers' actions.

These policies, customs, and failures were the moving force behind the violations of Plaintiff's Fourth and Fourteenth Amendment rights.

## COUNT VI - 42 U.S.C. § 1983 Conspiracy

Against: Corey Copeland and John Doe Officers 1-20

Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

To state a § 1983 conspiracy claim, a plaintiff must allege (1) an agreement between a state actor and a private party, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages. Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002).

Defendant Copeland, a private party, conspired with John Doe Officers to deprive Plaintiff of his constitutional right to remain in his lawful home. Specifically: Copeland contacted NYPD to remove Plaintiff despite knowing Plaintiff was a lawful tenant with proof of rent payment; officers visited the premises twice, after the first visit confirmed Plaintiff's tenancy through payment records, Copeland directed officers to return with force; officers returned at 8:30 PM and forcibly removed Plaintiff. This sequence of events demonstrates an agreement and coordinated action between Copeland and the Officers to achieve Plaintiff's unlawful removal.

As an alternative basis, Plaintiff asserts a claim under 42 U.S.C. § 1985(3) for conspiracy to deprive him of equal protection of the laws.

## COUNT VII - Conversion (State Law)

Against: Corey Copeland

Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

Following Plaintiff's unlawful removal from his residence, Plaintiff's personal property remained in the apartment. Copeland refused to return Plaintiff's property, refused to permit

ETUK - 10

Plaintiff access to the apartment, and instead referred Plaintiff to the NYPD. The NYPD denied possession of Plaintiff's property. Copeland intentionally and without authority interfered with Plaintiff's right to possess his property, constituting conversion under New York law. The value of the converted property is estimated at no less than $10,000.00.

## COUNT VIII - Intentional Infliction of Emotional Distress (State Law)

Against: All Defendants

Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

Defendants' conduct, which included drawing firearms on Plaintiff in his own home, placing him in injuriously tight handcuffs, forcibly transporting him, administering medication without consent, rendering him homeless, and depriving him of his property, was extreme and outrageous, intentional or reckless, and directly caused Plaintiff severe emotional distress. This conduct satisfies all elements of intentional infliction of emotional distress under New York law.

## COUNT IX - Negligent Infliction of Emotional Distress (State Law)

Against: All Defendants

Plaintiff realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

In the alternative, Defendants' actions were negligent and breached a duty of care owed to Plaintiff, directly resulting in severe emotional distress. The distress suffered by Plaintiff was a foreseeable result of Defendants' negligent conduct.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Akaniyene William Etuk respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

- A. Compensatory damages in an amount to be determined at trial for each constitutional violation and state-law claim;

- B. Punitive damages against individual officers and Corey Copeland in an amount to be determined at trial;

ETUK - 11

- C. Declaratory relief that Defendants' actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution;

- D. Injunctive relief preventing the City of New York and the NYPD from continuing the policy and practice of removing tenants from their residences without warrants or court orders;

- E. An order requiring Corey Copeland to return all of Plaintiff's personal property or, in lieu thereof, to pay Plaintiff the estimated value of $10,000.00;

- F. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

- G. Pre- and post-judgment interest as permitted by law;

- H. Such other and further relief as this Court deems just and proper.

## VII. DEMAND FOR BENCH TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## VIII. EXHIBITS

The following exhibits are incorporated herein by reference and will be submitted to the Court:

- Exhibit A: Hospital Record from Brookdale University Hospital

- Exhibit B: Copy of Rent Payments Made to Corey Copeland via CashApp ($ChazMoneyMatt)

- Exhibit C: CityMD Record Showing Soft Tissue Swelling Around the Handcuff Region

- Exhibit D: BronxCare Health System Orthopaedic Referral

- Exhibit E: Brookdale Document Confirming Plaintiff Was Brought In Handcuffed

- Exhibit F: Brookdale Document Confirming No Signs of Aggressive Behavior

- Exhibit G: Document Confirming Plaintiff Was Injected Without Permission

- Exhibit H: Document Indicating Plaintiff's Medical Record Was Fabricated

- Exhibit I: Request to Subpoena 911 Call Logs from 911 Emergency Call Center

- Exhibit J: CCRB Document Indicating Initial Acceptance of Complaint

Dated: July 25, 2026
Staten Island, New York

Respectfully submitted,

*Akaniyene William Etuk*

Akaniyene William Etuk
Plaintiff, Pro Se
217 Hamilton Avenue, Apt. #1-I
Staten Island, New York 10301
awetuk001@gmail.com
(718) 810-3683